**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ARCHIRODON CONSTRUCTION (OVERSEAS) COMPANY LIMITED,<br><br>Petitioner,<br>v.<br><br>GENERAL COMPANY FOR PORTS OF IRAQ, MINISTRY OF TRANSPORT OF THE REPUBLIC OF IRAQ, THE REPUBLIC OF IRAQ,<br><br>Respondents. | No. 22-cv-1571 (JEB) |

**PETITIONER ARCHIRODON CONSTRUCTION (OVERSEAS) COMPANY LIMITED'S MOTION FOR CONTEMPT SANCTIONS**

Pursuant to Federal Rule of Civil Procedure 37(b), petitioner Archirodon Construction (Overseas) Company Limited ("Archirodon") respectfully moves this Court for an order finding respondents Republic of Iraq, the Ministry of Transport of the Republic of Iraq, and the General Company for Ports of Iraq to be in civil contempt for failing to comply with this Court's February 7, 2025, order compelling them to comply with Archirodon's First Asset Discovery Requests by March 10, 2025, and imposing sanctions in the amount of $15,000 per day, jointly and severally, terminating upon respondents' satisfaction of the judgment or full compliance with Archirodon's First Asset Discovery Requests.

The grounds for the motion are set forth in the accompanying memorandum of points and authorities, the attached Declaration of Robert K. Kry and exhibits thereto, and the prior filings and orders entered in the case. Pursuant to Local Civil Rule 7(m), Archirodon's counsel attempted to meet and confer with respondents over this motion but received no response.

Dated: April 8, 2025
Washington, D.C.

Respectfully submitted,


/s/ Robert K. Kry
Robert K. Kry
D.C. Bar # 490545
MOLO LAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2011
rkry@mololamken.com

Alexandra C. Eynon
(*pro hac vice*)
MOLO LAMKEN LLP
430 Park Avenue, 6th Floor
New York, New York 10022


*Attorneys for Petitioner Archirodon Construction (Overseas) Company Limited*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ARCHIRODON CONSTRUCTION (OVERSEAS) COMPANY LIMITED,<br><br>Petitioner,<br>v.<br><br>GENERAL COMPANY FOR PORTS OF IRAQ, MINISTRY OF TRANSPORT OF THE REPUBLIC OF IRAQ, THE REPUBLIC OF IRAQ,<br><br>Respondents. | No. 22-cv-1571 (JEB) |

# PETITIONER ARCHIRODON CONSTRUCTION (OVERSEAS) COMPANY LIMITED'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CONTEMPT SANCTIONS


Alexandra C. Eynon
*(pro hac vice)*
MOLO LAMKEN LLP
430 Park Avenue, 6th Floor
New York, New York 10022

Robert K. Kry
D.C. Bar # 490545
MOLO LAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2011
rkry@mololamken.com

*Attorneys for Petitioner Archirodon Construction (Overseas) Company Limited*

## TABLE OF CONTENTS


Page

BACKGROUND ........................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I. The Court Should Hold Respondents In Contempt for Defying This Court's Clear and Unambiguous Discovery Order ......................................................................... 3

II. The Court Should Impose Monetary Sanctions of $15,000 per Day ................................. 7

CONCLUSION .......................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
798 F. Supp. 2d 260 (D.D.C. 2011) .......... 7

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
915 F. Supp. 2d 148 (D.D.C. 2013) .......... 8

*In re Fannie Mae Sec. Litig.*,
552 F.3d 814 (D.C. Cir. 2009) .......... 7

* *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
603 F. Supp. 2d 1 (D.D.C. 2009) .......... 4, 7, 9

* *Micula v. Government of Romania*,
No. 17-cv-02332, 2020 WL 6822695 (D.D.C. Nov. 20, 2020) .......... *passim*

*Parsi v. Daioleslam*,
778 F.3d 116 (D.C. Cir. 2015) .......... 2

*Potter v. District of Columbia*,
126 F.4th 720 (D.C. Cir. 2025) .......... 3

*Salazar ex rel. Salazar v. District of Columbia*,
602 F.3d 431 (D.C. Cir. 2010) .......... 7

*In re Sealed Case*,
932 F.3d 915 (D.C. Cir. 2019) .......... 3

* *Servaas Inc. v. Republic of Iraq*,
No. 09-cv-1862, 2014 WL 279507 (S.D.N.Y. Jan. 24, 2014) .......... 5, 6, 8, 9

* *Sistem Mühendislik Inşaat Sanayi Ve Ticaret, A.Ş. v. Kyrgyz Republic*,
No. 12-cv-4502, 2018 WL 6251982 (S.D.N.Y. Mar. 30, 2018) .......... 4, 7, 9

* *Sistem Mühendislik Inşaat Sanayi Ve Ticaret, A.Ş. v. Kyrgyz Republic*,
No. 12-cv-4502, 2020 WL 7890222 (S.D.N.Y. Nov. 5, 2020) .......... 5, 6, 9

*Telenor Mobile Commc'ns AS v. Storm LLC*,
587 F. Supp. 2d 594 (S.D.N.Y. 2008) .......... 8

*United States v. Latney's Funeral Home, Inc.*,
41 F. Supp. 3d 24 (D.D.C. 2014) .......... 7

*United States v. Philip Morris USA Inc.*,
287 F. Supp. 2d 5 (D.D.C. 2003) .......... 8

*Walters v. People's Republic of China*,
72 F. Supp. 3d 8 (D.D.C. 2014) ........ 8

**STATUTES AND RULES**

28 U.S.C. § 1961(a) ........ 9

Fed. R. Civ. P. 37(b)(2)(A)(vii) ........ 2

Petitioner Archirodon Construction (Overseas) Company Limited ("Archirodon") respectfully moves for civil contempt sanctions against respondents Republic of Iraq, the Ministry of Transport of the Republic of Iraq, and the General Company for Ports of Iraq ("GCPI") based on respondents' refusal to comply with their court-ordered discovery obligations.

## BACKGROUND

Archirodon obtained a $120 million judgment against respondents over a year ago, on February 1, 2024. Declaration of Robert K. Kry ("Kry Decl.") ¶2 & Ex. A. This Court then granted Archirodon's motion to authorize attachment and execution. Kry Decl. ¶3 & Ex. B. Archirodon served its First Asset Discovery Requests on August 27, 2024, seeking information and documents relevant to enforcing its judgment. Kry Decl. ¶4 & Ex. C. Respondents produced no documents or information in response. Instead, they asserted a litany of patently baseless objections, including that they were entitled to sovereign immunity (despite this Court's ruling to the contrary), that unspecified Iraqi laws prohibited them from producing any information, and that they should not have to participate in discovery because they allegedly have ample resources in Iraq with which to satisfy the judgment. Kry Decl. ¶¶5-6 & Exs. D & E.

Archirodon moved to compel on October 14, 2024. Kry Decl. ¶7 & Ex. F. Respondents did not file a response. Instead, on October 16, 2024, respondents' counsel moved to withdraw from representing them. Kry Decl. ¶8 & Ex. G. In their motion, respondents' counsel reported that they had "sought instructions with respect to the responses to discovery in this matter but were unable to obtain them," and that "[t]he absence of the ability to obtain the necessary guidance from the clients prevents Respondents' Counsel from being able to render effective legal representation." Kry Decl. Ex. G at 2-3. They reported that "Respondents had been given ample warning . . . that Respondents had an obligation to respond to discovery." *Id.* at 5. Respondents' counsel warned their client representative on August 29, 2024, that "the clients are

obligated to respond to discovery requests," and on October 2, 2024, they "again requested that the client provide the requested information and documents." Ex. H at 1. On October 15, 2024, respondents' counsel warned yet again that they were "seriously concerned about Clients not producing documents and information responsive to discovery requests" and that they had "not received any instructions, responsive documents, or information from the Client." *Id.*

This Court ordered respondents to file any response to Archirodon's motion to compel within 14 days of its ruling on the motion to withdraw. Kry Decl. ¶ 11 & Ex. I. After this Court fully resolved that latter motion on January 10, 2025, Archirodon promptly served respondents with notice of their January 24, 2025 deadline. Kry Decl. ¶ 15 & Ex. M. That deadline came and went, so the Court granted the motion to compel as conceded and ordered respondents to comply with Archirodon's discovery requests by March 10, 2025. Kry Decl. ¶ 16 & Ex N. Archirodon promptly notified respondents of that order too. Kry Decl. ¶ 17 & Ex. O.

On February 19, 2025, GCPI sent a one-sentence email to Archirodon's counsel stating that "our company is in the process of formal procedures, and if it is completed, meanwhile we will respond to you with the appropriate reply." Kry Decl. ¶ 18 & Ex. P. To date, respondents have produced no documents in response to Archirodon's document requests, have provided no answers to Archirodon's interrogatories, and apart from the one cryptic email quoted above, have not communicated with Archirodon in any manner. Kry Decl. ¶¶ 19-21.

## **ARGUMENT**

Federal Rule of Civil Procedure 37(b) provides that, where a party "fails to obey an order to provide or permit discovery," the Court may "issue further just orders," including "treating as contempt of court the failure to obey." Fed. R. Civ. P. 37(b)(2)(A)(vii). Under that rule, "[s]anctions can include (but are not limited to) . . . holding the disobedient party in contempt." *Parsi v. Daioleslam*, 778 F.3d 116, 128 (D.C. Cir. 2015). The movant must show " 'by clear and

convincing evidence' that the alleged contemnor has violated a 'clear and unambiguous' order of the court." *Potter v. District of Columbia*, 126 F.4th 720, 723 (D.C. Cir. 2025); *see also In re Sealed Case*, 932 F.3d 915, 939 (D.C. Cir. 2019) (contempt appropriate where party "violated an order that is clear and unambiguous, and the violation [is] proved by clear and convincing evidence"). Where the movant makes that showing, "district courts do not have discretion to overlook a proven violation, absent a recognized defense." *Potter*, 126 F.4th at 724.

The evidence amply supports a finding of contempt here.

## I. THE COURT SHOULD HOLD RESPONDENTS IN CONTEMPT FOR DEFYING THIS COURT'S CLEAR AND UNAMBIGUOUS DISCOVERY ORDER

This Court's order granting Archirodon's motion to compel was clear and unambiguous, and there is clear and convincing evidence that respondents failed to comply with that order. Contempt sanctions are accordingly appropriate.

On February 7, 2025, this Court ordered that "Petitioner's . . . Motion to Compel is GRANTED as conceded, and Respondent shall respond to the discovery requests by March 10, 2025." Kry Decl. Ex. N. That order was clear and unambiguous: Respondents were required to "respond" to Archirodon's First Asset Discovery Requests, and they were required to do so "by March 10, 2025." That order left nothing to the imagination.

Respondents' failure to comply with that order was equally unmistakable. The March 10 deadline came and went, and respondents produced no documents or information in response to Archirodon's First Asset Discovery Requests at all. Kry Decl. ¶¶ 19-21. Instead, they sent only one abstruse email stating that "our company is in the process of formal procedures, and ***if*** it is completed, meanwhile we will respond to you with the appropriate reply." Kry Decl. ¶ 18 & Ex. P (emphasis added). Of course, this Court's order directed respondents to ***comply*** with

Archirodon's asset discovery requests, not merely to engage in "formal procedures" to decide ***whether*** to comply. Respondents' noncompliance is indisputable.

Other courts have held foreign sovereigns in contempt for refusing to comply with similar asset discovery orders. In *Micula v. Government of Romania*, No. 17-cv-02332, 2020 WL 6822695 (D.D.C. Nov. 20, 2020), *aff'd*, No. 20-7116, 2022 WL 2281645 (D.C. Cir. June 24, 2022), Judge Mehta held Romania in contempt after he ordered the government to respond to the petitioners' interrogatories but Romania failed to comply. *Id.* at *5. The court noted that "Romania does not dispute that it has refused to respond to the propounded interrogatories nor does it assert that the court's order was anything other than 'clear and unambiguous.'" *Id.* The court rejected Romania's arguments that sovereign immunity or comity concerns somehow justified the failure to comply. *Id.* at *5-6.

Similarly, in *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 603 F. Supp. 2d 1 (D.D.C. 2009), *aff'd*, 637 F.3d 373 (D.C. Cir. 2011), Judge Leon held the Democratic Republic of Congo in contempt for failing to comply with asset discovery. Even though (unlike here) the sovereign produced some documents, its response "fell woefully short of compliance" because "DRC did not produce any documents pertaining to DRC assets 'outside the territorial jurisdiction of this Court,' but rather, re-produced duplicates of documents pertaining to DRC's Washington, DC assets that were subject to [an earlier] discovery plan." *Id.* at 2.

In *Sistem Mühendislik Inşaat Sanayi Ve Ticaret, A.Ş. v. Kyrgyz Republic*, No. 12-cv-4502, 2018 WL 6251982 (S.D.N.Y. Mar. 30, 2018), *adopted*, 2018 WL 5629900 (S.D.N.Y. Oct. 31, 2018) – one of the cases on which *Micula* relied – the court found the Kyrgyz Republic in contempt for failing to comply with asset discovery. Even though (again unlike here) the sovereign partially complied by producing a total of seventeen documents on two occasions, the court held the Kyrgyz Republic in contempt because that production was "a token production

that did not represent a meaningful or good-faith effort to comply." *Id.* at *4. In a later decision, the court increased the contempt sanctions due to the Kyrgyz Republic's continued noncompliance, including its failure to cooperate with counsel in responding to asset discovery, causing counsel to file a motion to withdraw. *See Sistem Mühendislik Inşaat Sanayi Ve Ticaret, A.Ş. v. Kyrgyz Republic*, No. 12-cv-4502, 2020 WL 7890222, at *4 (S.D.N.Y. Nov. 5, 2020), *adopted*, 2021 WL 39582 (S.D.N.Y. Jan. 5, 2021).

Finally – and particularly relevant to this case – in *Servaas Inc. v. Republic of Iraq*, No. 09-cv-1862, 2014 WL 279507 (S.D.N.Y. Jan. 24, 2014), *vacated in part on other grounds*, 661 F. App'x 7 (2d Cir. 2016), the court held Iraq and its Ministry of Industry in contempt for failing to comply with asset discovery. The court found that "[its] Discovery Order [was] clear and unambiguous," that Iraq's "noncompliance with the Discovery Order ha[d] been established by clear and convincing evidence," and that Iraq "ha[d] not diligently attempted to comply with [its] post-judgment discovery obligations." *Id.* at *2.

The Court should find respondents in contempt for the same reasons here. Respondents have no excuse for their failure to comply. Archirodon served respondents, by both U.S. mail and email, with notice of the Court's deadline for responding to Archirodon's motion to compel and then notice of the Court's order granting that motion and ordering respondents to comply with Archirodon's discovery requests. Kry Decl. ¶15 & Ex. M; Kry Decl. ¶17 & Ex. O. Respondents were thus fully aware of their obligation to comply. The one confusing and oddly conditional email that GCPI sent – "our company is in the process of formal procedures, and if it is completed, meanwhile we will respond to you with the appropriate reply," Kry Decl. Ex. P – raises more questions than it answers, but at the very least confirms that respondents received Archirodon's notices and were well aware of their obligation to comply.

The communications that respondents' counsel disclosed in their motion to withdraw confirm that respondents acted in willful bad faith. Those communications reveal that, notwithstanding the specious legal objections they served on Archirodon, respondents' counsel privately told their clients that "[they] are obligated to respond to discovery requests," asked their clients to "provide the requested information and documents," and expressed "serious[ ] concern[s] about [the] Clients not producing documents and information responsive to [the] discovery requests." Ex. H at 1. Respondents were thus told flat out by their own lawyers that they needed to comply, but they ignored that advice. Respondents' refusal to comply against the advice of their own counsel greatly aggravates their contempt. *See Sistem*, 2020 WL 7890222, at *4 (imposing additional sanctions where "[the Republic's counsel] . . . had alerted the Republic to Sistem's summary of the outstanding discovery obligations, but . . . the Republic had thereafter ceased responding to [their counsel's] communications").

Iraq's prior experience with sanctions in *Servaas* underscores its bad faith. In that case, the court found that Iraq's "failures to comply with the Discovery Order have been knowing and in complete disregard of the Court's directives." 2014 WL 279507, at *3. "[A] representative of Iraq was present at the Contempt Hearing," but "did not want to make any statement." *Id.* Iraq is thus well aware of the consequences it faces for noncompliance.

Finally, respondents' admitted access to extensive financial resources is yet another aggravating factor that supports a finding of contempt. Respondents repeatedly objected to Archirodon's asset discovery demands on the ground that discovery was unnecessary because respondents had sufficient resources to pay the judgment in Iraq. *See* Kry Decl. Ex. D at 5, 6, 7, 8, 9, 10 (urging that discovery was "unnecessary because Respondents have sufficient assets to satisfy the judgment within the territory of Iraq"). Of course, that objection is completely meritless as a basis for refusing to respond to asset discovery. But it also cuts sharply against

respondents for purposes of this motion. Respondents are not refusing to pay the judgment or to pay their own lawyers because of poverty. They have ample resources. They have simply made a strategic decision to defy this Court's judgment and discovery orders.

## II. THE COURT SHOULD IMPOSE MONETARY SANCTIONS OF $15,000 PER DAY

The appropriate sanction for respondents' refusal to comply with the Court's asset discovery orders is a per diem fine designed to coerce respondents' compliance with those orders and to compensate Archirodon for the lost use of its funds. Given the size of the judgment and Iraq's ability to pay, the appropriate fine is $15,000 per day.

"Federal courts have broad equitable powers to craft remedial sanctions for civil contempt." *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 36 (D.D.C. 2014). Civil contempt sanctions are ordinarily designed either "to coerce compliance or [to] compensate a complainant for losses sustained." *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009); *see also Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260, 272 (D.D.C. 2011) (similar). A traditional remedy is a per diem fine that the contemnor must pay to the complainant until it has brought itself into compliance. *See Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 439 (D.C. Cir. 2010).

In *Micula*, for example, the court imposed "a sanction of $25,000 per week, . . . doubling every four weeks until either reaching a maximum of $100,000 per week or until Romania complies with the Discovery Order." 2020 WL 6822695, at *6-7. In *FG Hemisphere*, the court imposed sanctions of "$5000 per week, doubling every four weeks until reaching a maximum of $80,000 per week, until DRC satisfies its discovery obligations." 603 F. Supp. 2d at 3; *see also* No. 03-cv-01314 (D.D.C. Mar. 4, 2010) (minute order). In *Sistem*, the court imposed sanctions of "$15,000 per day commencing thirty days after the entry of this order, terminating upon the

Republic's satisfaction of the judgment or full compliance with all outstanding discovery demands." 2021 WL 39582, at *1. And in *Servaas*, the court imposed sanctions of "$2,000 per day . . . continuing for each day that Iraq continues to fail to comply with the Discovery Order." 2014 WL 279507, at *5.

Other courts have imposed even greater sanctions in various contexts. *See, e.g.*, *United States v. Philip Morris USA Inc.*, 287 F. Supp. 2d 5, 15 (D.D.C. 2003) (imposing sanctions of $25,000 for every day of noncompliance with two discovery orders); *Walters v. People's Republic of China*, 72 F. Supp. 3d 8, 13 (D.D.C. 2014) (threatening sanctions of $246,500 per day for failure to comply with document production order); *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 915 F. Supp. 2d 148, 154-55 (D.D.C. 2013) (imposing sanctions of $50,000 per day for failure to comply with order to surrender property); *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 621 (S.D.N.Y. 2008) (imposing "an initial contempt sanction of $100,000 per day, doubling to $200,000 per day thirty days thereafter, and to $400,000 per day thirty days after that, and continuing to double every thirty days until compliance is achieved," for failure to comply with order directing compliance with injunctive provisions of arbitral award), *aff'd*, 351 F. App'x 467 (2d Cir. 2009).

The twin goals of coercion and compensation support a per diem fine at the high end of the range here. This Court entered judgment against respondents for $120 million plus post-judgment interest. Kry Decl. Ex. A. The large size of that judgment means that respondents have a strong financial incentive to avoid paying the judgment and a similarly strong incentive to conceal documents and information that could enable Archirodon to collect it. A substantial contempt sanction is therefore necessary to neutralize that financial incentive and coerce respondents to comply. For comparison, the $120 million judgment in this case is greater than the amount of the judgment outstanding in *Micula* ($97 million), 2020 WL 6822695, at *1;

roughly ***four times*** the amount of the judgments in *FG Hemisphere* ($11.7 million plus $18.4 million), No. 03-cv-01314, Dkt. 17 (D.D.C. Sept. 20, 2004) & No. 03-cv-01315, Dkt. 24 (D.D.C. Feb. 1, 2005); ***eight times*** the judgment in *Servaas* ($14.2 million), 2014 WL 279507, at *1; and ***ten times*** the judgment in *Sistem* ($11.6 million), 2020 WL 7890222, at *1. The $15,000 per day sanction that Archirodon seeks is well within the range of the sanctions in *Micula*, *FG Hemisphere*, and *Sistem*, and although it is larger than the sanction in *Servaas*, the difference is justified by the much larger judgment in this case. The goal of coercion thus amply supports the amount of sanctions that Archirodon seeks.

The goal of compensation points the same direction. Where a foreign sovereign refuses to comply with asset discovery, the judgment creditor suffers obvious harm by being denied the information it needs to collect its judgment. Post-judgment interest compensates for the delay to some extent, but that interest is calculated at the U.S. Treasury rate. 28 U.S.C. § 1961(a). That rate is essentially a risk-free rate for short-term U.S. government debt. It vastly understates what a developing nation like Iraq must actually pay to borrow funds. *See Sistem*, 2020 WL 7890222, at *5 (justifying sanction on the ground that "the post-judgment interest rate on the judgment is less than the Republic's actual cost of borrowing"). Since this Court entered judgment, the U.S. Treasury rate has averaged around 4.6%, but Iraq's cost of borrowing has averaged around 7.8%, or 3.2% higher. Kry Decl. ¶22 & Ex. Q. A sanction of more than $10,500 per day (*i.e.*, $120 million × 3.2% / 365 days) is necessary simply to compensate Archirodon for the risks it faces by being forced to provide speculative-grade credit to Iraq at far below market rates.

Finally, Iraq's ample resources to pay the judgment confirm the need for strong contempt sanctions. The Iraqi government takes in approximately $104 billion in revenue per year. Kry Decl. Ex. R at 30 (annual revenue of IQD 134.6 trillion at an exchange rate of IQD 1300 per U.S. dollar); *see also* Kry Decl. Exs. S, T (annual budget figures for 2023 and 2024). Roughly 91%

of Iraq's revenue derives from its vast riches in oil and mineral wealth, while only 3.6% derives from taxes on the Iraqi people. Kry Decl. Ex. R at 32 tbl.17. The $120 million judgment in this case thus represents only ***one-tenth of one percent*** of Iraq's resource-driven annual revenues. Iraq could easily pay the judgment if it wanted to.[1]

The Court need not take our word for it. Respondents themselves repeatedly opposed discovery as unnecessary on the ground that they have ample resources to pay the judgment. Kry Decl. Ex. D at 5-10. This simply is not a case of a judgment debtor who is too poor to pay. Respondents are intentionally thumbing their nose at this Court's authority. The Court should impose substantial sanctions to coerce respondents' compliance and to compensate Archirodon for the losses it is suffering as a result of respondents' inaction.

[1] In *Micula*, the court focused on Romania's gross domestic product (USD $211.9 billion). 2020 WL 6822695, at *7. It makes more sense to focus on public revenues (*i.e.*, funds the government actually has available to spend) rather than gross domestic product (*i.e.*, the overall economic activity in a country). But to the extent GDP matters, Iraq's GDP is similar to Romania's. *See* Kry Decl. Ex. R at 8 (IQD 330 trillion = USD $254 billion).

## CONCLUSION

The Court should hold respondents in civil contempt and impose sanctions in the amount of $15,000 per day, payable jointly and severally to Archirodon, terminating upon respondents' satisfaction of the judgment or full compliance with Archirodon's First Asset Discovery Requests.

Dated: April 8, 2025
Washington, D.C.

Respectfully submitted,

/s/ Robert K. Kry
Robert K. Kry
D.C. Bar # 490545
MOLO LAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2011
rkry@mololamken.com

Alexandra C. Eynon
*(pro hac vice)*
MOLO LAMKEN LLP
430 Park Avenue, 6th Floor
New York, New York 10022

*Attorneys for Petitioner Archirodon Construction (Overseas) Company Limited*

**CERTIFICATE OF SERVICE**

I certify that, on April 8, 2025, the foregoing document and all supporting papers were served on respondents as follows:

BY U.S. MAIL TO:

GENERAL COMPANY FOR PORTS OF IRAQ
Malik bin Dinar Street, Ma'qil Quarter
Basrah, Iraq

MINISTRY OF TRANSPORT OF THE REPUBLIC OF IRAQ
Omar Bin Al Khatab Street and Bur Said Street
Baghdad, Iraq

THE REPUBLIC OF IRAQ
c/o Minister of Foreign Affairs
Ministry of Foreign Affairs
Al-Salhiya, Fadhil Al-Jimali Street
Baghdad, Iraq

BY EMAIL TO:

info@scp.gov.iq
legal_dept@moj.gov.iq
Attention: Legal Department

/s/ Robert K. Kry
Robert K. Kry